IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SYBIL JONES DADE,                     *
                                      *
      Plaintiff,                      *
                                      *
vs.                                   *      CIVIL ACTION NO. 17-00343-B
                                      *
NANCY BERRYHILL,                      *
Acting Commissioner of Social         *
Security,                             *
                                      *
      Defendant.                      *

## ORDER

Plaintiff Sybil Jones Dade (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On April 12, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 21). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

# I.   <u>Procedural History</u>[1]

Plaintiff filed her application for benefits on July 21, 2014, alleging disability beginning December 31, 2012, based on "back, pinch[ed] nerve, blurred vision, vertigo, and diabetes." (Doc. 15 at 182, 211, 217).  Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Laura Robinson (hereinafter "ALJ") on April 27, 2016.  (Id. at 69).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id.). A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 81).  On June 24, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 43).  The Appeals Council denied Plaintiff's request for review on June 2, 2017.  (Id. at 5).  Therefore, the ALJ's decision dated June 24, 2016, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties waived oral argument on April 12, 2018.  (Doc. 20).  This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   <u>Issues on Appeal</u>

1. **Whether substantial evidence supports the Residual Functional Capacity ("RFC") for a**

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

full range of light work given the ALJ's failure to order a second consultative medical examination?

2. **Whether the ALJ erred in relying on the GRIDS to find Plaintiff not disabled?**

3. **Whether the ALJ erred in assessing Plaintiff's credibility?**

## III. <u>Factual Background</u>

Plaintiff was born on January 2, 1963, and was fifty-three years of age at the time of her administrative hearing on April 27, 2016. (Doc. 15 at 211). Plaintiff completed the tenth grade in high school and is able to read. (<u>Id.</u> at 73-74).

Plaintiff last worked from 2013 to 2014 as a house cleaner and a private sitter. (<u>Id.</u> at 74, 80-81). Prior to that, she worked part-time as a cashier. (<u>Id.</u>).

Plaintiff testified that she can no longer work due to back pain, swelling in her feet, and carpal tunnel syndrome. (<u>Id.</u> at 74). According to Plaintiff, she takes Lasix for diabetes, which is now under control, and Mobic and Lyrica for back and neck pain. (<u>Id.</u> at 75). Some of her medications cause drowsiness and dizziness. (<u>Id.</u> at 76, 81).

## IV. <u>Standard of Review</u>

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial

evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V.    Statutory and Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.  Discussion**

> **A. Substantial evidence supports the Residual Functional Capacity ("RFC") for a full range of light work and the ALJ's decision not to order an additional consultative medical examination.**

In her brief, Plaintiff argues that the RFC for a full range of light work is not supported by substantial evidence, particularly given the ALJ's failure to order a second consultative examination in order to obtain an expert opinion on her limitations with respect to standing and walking caused by the swelling and pain in her legs from diabetes. (Doc. 16 at 4, 8). The Government counters that the RFC is fully supported by the substantial evidence and that the ALJ was not required to order an additional consultative examination

given that the record contained substantial evidence to allow the ALJ to make an informed decision on Plaintiff's physical capabilities and, thus, the issue of disability. (Doc. 17 at 3). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

In the instant case, the ALJ found that Plaintiff has the severe impairments of diabetes mellitus, diabetic neuropathy, hypertensive cardiovascular disease, and obesity. (Doc. 15 at 46). The ALJ also determined that Plaintiff has the RFC to perform the

full range of light work but is unable to perform her past relevant work.[3] (Id. at 48, 53). The ALJ concluded that, based upon the RFC for a full range of light work, Plaintiff's age, education, and work experience, a finding of "not disabled" was directed by Medical-Vocational Rules 202.18 and 202.11. (Id. at 54). Having reviewed the evidence at length, the Court is satisfied that the RFC is supported by substantial evidence.

As the ALJ found, Plaintiff's treatment records show that she received treatment from January 2012 to April 2016 for various ailments including diabetes, diabetic neuropathy, hypertensive cardiovascular disease, back, neck, arm, leg, and foot pain, and obesity. (Id. at 288-631). The record shows that Plaintiff's primary treating physician was Dr. Herbert Kinsey, M.D., and that she frequently presented to hospital emergency rooms for routine medical treatment as well.[4] (Id.).

As the ALJ found, Plaintiff's treatment records reflect recurrent reports of back and neck pain, as well as swelling, pain,

---

[3] Relying on the testimony of the VE, the ALJ found that Plaintiff's past relevant work was medium, which exceeds the RFC. (Id. at 52-53).

[4] Plaintiff's treatment records reflect that she presented to hospital emergency rooms approximately thirteen times between February 2014 and April 2016 for complaints of back pain, dizziness, arm pain, chest pain, swelling in her extremities, body aches, and shortness of breath and was generally treated with medication and discharged the same day. (Doc. 15 at 288-388, 454-636).

burning, tingling, and numbness in her arms, legs, and feet associated with diabetes, diabetic neuropathy, and obesity. (Id. at 351, 411, 429-430, 436-37, 444-49, 451, 453, 502, 587, 589, 615). Plaintiff also complained of back pain, which her treatment providers associated with lumbar strain and muscle spasms. (Id. at 346, 437, 446). Despite these recurring reports of pain and swelling, Plaintiff's treatment records likewise repeatedly document "mild" symptoms, unremarkable spine, "mild" degenerative change in thoracic spine, full range of motion in back and upper extremities bilaterally, negative straight leg raise, normal muscle strength, normal reflexes, normal sensation, no muscle weakness, and normal gait. (Id. at 300-01, 351, 396, 410, 420-21, 430-32, 460-65, 491, 499, 507-09, 512, 531, 552, 556, 597-98, 604, 613-28).

Likewise, CT scans of Plaintiff's head and chest reflect normal findings, with the singular exception of a small, benign nodule on Plaintiff's left lung, and multiple x-rays of Plaintiff's lumbar spine[5] and chest, EKGs, and an ultrasound of Plaintiff's left arm were consistently normal.[6] (Id. at 427, 462, 465, 483, 493-94, 509, 512, 522, 531, 577, 587, 593, 600, 602, 625, 628).

The record shows that Plaintiff's medical treatment was

_____

[5] X-rays of Plaintiff's lumbar spine on February 11, 2014, showed "minimal" degenerative changes. (Doc. 15 at 346).

[6] A radiology report dated January 7, 2012, also confirmed no deep vein thrombosis in Plaintiff's left upper extremity. (Doc. 15 at 406).

conservative, consisting largely of medication to treat her
diabetes, pain medication, and instructions to change her diet and
lose weight. (Id. at 355, 409, 432-33, 485, 531-32, 589-90, 614-
15). In addition, Plaintiff's treatment notes reflect that, when
taken, her medications resulted in improvement and stabilization of
symptoms. (Id. at 445, 461, 464, 485, 614-15).

In addition, consultative physician, Dr. Regan M. Andrade,
M.D., examined Plaintiff on September 30, 2014, and noted her
complaints of low back pain, poor vision, and vertigo. (Id. at
420). Dr. Andrade's physical examination findings likewise
document normal muscles in neck, full range of motion in neck,
nontender neck, unremarkable spine, normal appearance of spine,
thoracic and lumbosacral tenderness, no cervical or SI joint
tenderness, no spasm, full range of motion without pain, negative
straight leg raise, normal strength, normal sensation, normal deep
tendon reflex, full range of motion in upper extremity joints
bilaterally, normal range of motion in cervical spine, normal range
of motion in lumbar spine, full range of motion in lower extremity
joints bilaterally, no tremors in extremities, no varicosities, no
edema/swelling, no clubbing, no cyanosis, normal sensation, normal
motor strength bilaterally, 5/5 strength in upper and lower
extremities, normal grip strength bilaterally, normal gait, and no
assistive devices. (Id. at 420-21). Dr. Andrade diagnosed
Plaintiff with back pain, vertigo, diabetes (controlled),

hypertension (benign), and hyperlipidemia. (Id. at 421). Dr. Andrade offered no opinion on whether Plaintiff had any limitations from any of these conditions.

While there is no question that Plaintiff has been diagnosed with diabetes, diabetic neuropathy, hypertensive cardiovascular disease, and obesity and has experienced pain in her neck and back, as well as pain and swelling in her extremities and feet as a result of these medical conditions, Plaintiff's treatment records, on the whole, reflect routine, conservative treatment resulting in largely normal examination findings.

In addition, the evidence of Plaintiff's activities of daily living reflects that she takes care of her own personal needs,[7] that she lives with and takes care of her disabled adult sister, that she cooks, cleans, does laundry, sweeps, vacuums, makes the beds, goes to church, goes to the movies, shops, and handles her own finances. (Id. at 79-80, 250-54).

Despite the foregoing substantial evidence, Plaintiff argues that the ALJ erred in failing to fulfill her duty to develop the record by ordering a second consultative examination to obtain an expert opinion on whether Plaintiff's medical conditions would prevent her from standing/walking six hours a day as required for performance of light work. (Doc. 16 at 5). Having reviewed the

---

[7] Plaintiff testified that she sometimes has trouble using a "flat iron" on her hair. (Doc. 15 at 79).

record at length, the Court finds that Plaintiff's claim is without merit.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and of producing evidence in support of his claim, while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).

In fulfilling the duty to conduct a full and fair inquiry, the ALJ has the discretion to order a consultative examination where the record establishes that such is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). However, the ALJ is not required to order an additional consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision."); see also Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."). Further, "there must be a showing of prejudice before [the court]

will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995).  In evaluating the necessity for a remand, the Court is guided by "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Id. (citations omitted).

In the instant case, the record before the ALJ contained the medical records from the physicians and hospitals that treated Plaintiff for her severe diabetes, diabetic neuropathy, hypertensive cardiovascular disease, and obesity, and the record contains no discernible evidentiary gaps related to those impairments.  In addition, the record shows that the ALJ ordered a consultative physical examination, which was performed by Dr. Andrade on September 30, 2014.  (Doc. 15 at 420).  While Dr. Andrade did not offer an opinion on Plaintiff's functional limitations, he did document a vast number of "normal" physical examination findings, all of which support the ALJ's determination that Plaintiff can perform light work, including the standing/walking requirement.

Moreover, as Defendant points out, Plaintiff was represented by an attorney and bore the burden of presenting evidence to support her claim of disability.  Plaintiff's attorney represented to the ALJ at the hearing that he had reviewed the record (which contained

treatment records spanning a three-year period) and that he had no objections to the evidence, nothing additional to submit, and nothing further that he wished to be added to the file. (Doc. 15 at 71, 83).

Based on the foregoing, the Court is satisfied that the record was sufficient to enable the ALJ to determine Plaintiff's RFC and, further, that substantial evidence supports the ALJ's RFC determination that Plaintiff can perform the full range of light work. Indeed, there is nothing in the record which indicates that Plaintiff's limitations exceed those in the RFC. Therefore, Plaintiff's claim must fail.[8]

### B. The ALJ did not err in relying on the vocational GRIDS to find that Plaintiff is not disabled.

Next, Plaintiff argues that the ALJ erred in relying on the

---

[8] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").

Medical-Vocational Guidelines ("Grids")[9] to make a determination that she is not disabled. (Doc. 16 at 12). Specifically, Plaintiff argues that she has significant nonexertional limitations caused by pain and swelling from her diabetes and other medical conditions, which precluded the ALJ from using the Grids to determine disability. (Id. at 12). The Commissioner counters that substantial record evidence supports the finding that neither Plaintiff's pain nor swelling significantly limits her basic work skills. Therefore, the ALJ's use of the Grids to determine disability was appropriate. (Doc. 17 at 8). The Court has reviewed the record at length and finds Plaintiff's claim to be without merit.

As stated, in the instant case, the ALJ found that Plaintiff has the severe impairments of diabetes mellitus, diabetic neuropathy, hypertensive cardiovascular disease, and obesity, and that, even with these medical conditions, Plaintiff has the RFC to perform the full range of light work. (Id. at 46). The ALJ further found that, based on Plaintiff's RFC, as well as her age, education, and work experience, a finding of "not disabled" is directed by

---

[9] "The Grids are a series of matrices which correlate to a set of variables — the claimant's residual functional capacity, age, education, background, and previous work experience — and can be used, at step five, to determine whether claimant has the ability to adjust to other work in the national economy." Heatly v. Commissioner of Soc. Sec., 382 Fed. Appx. 823, 825 n.4 (11th Cir. 2010). "On entry of these variables into their appropriate matrix, a determination of disabled or not disabled is rendered." Id.

Medical-Vocational Rules 202.18 and 202.11.  (Id. at 46, 54).

It is clear in this Circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  The ALJ must articulate specific jobs that the claimant is able to perform given his or her age, education, and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." Id.

One means by which the Commissioner meets this burden is by reliance on the Grids.  Id.  However, exclusive reliance upon the Grids is inappropriate "'either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.'"[10]  Id. at 1202.

Where nonexertional impairments are present, "[t]he ALJ must 'make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the

---

[10] Nonexertional limitations are those limitations that "'affect an individual's ability to meet the nonstrength demands of jobs' and include mental limitations and restrictions, pain limitations, and all physical limitations and restrictions that are not reflected in the seven strength demands." Callens v. Astrue, 2012 U.S. Dist. LEXIS 115043, *18, 2012 WL 3542200, *7 (N.D. Ala. Aug. 15, 2012) (quoting S.S.R. 96-4p).  "Exertional limitations 'affect your ability to meet the strength demands of jobs,' and include 'sitting, standing, walking, lifting, carrying, pushing, and pulling.'" Id. at *6 (quoting 20 C.F.R. § 404.1569(a)).

given work capacity level indicated by the exertional limitations.'" Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert." MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). "'It is only when the claimant can clearly do *unlimited* types of [work at a given level] that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.'" Allen, 880 F.2d at 1202 (emphasis in original) (citations omitted); see also Garred v. Astrue, 383 Fed. Appx. 820, 824 (11th Cir. 2010) ("When a claimant has non-exertional impairments that significantly limit her ability to work, the ALJ may use the Guidelines as a framework, but should also consult with a VE to determine how the claimant's impairments affect her ability to perform other jobs that exist in the national economy.") (citing Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002)).

In the instant case, Plaintiff argues that the ALJ erred in not making a "specific finding" that her alleged nonexertional limitations (*i.e.*, pain and swelling) do not significantly limit her basic work skills. However, in formulating Plaintiff's RFC, the ALJ discussed, at length, Plaintiff's treatment records regarding her symptoms caused by her medical conditions, including pain and swelling, particularly in her extremities. As the ALJ

pointed out, Plaintiff's treatment records document that, despite the pain and swelling, she regularly and repeatedly had full range of motion in all extremities, normal reflexes, normal sensation, no muscle weakness, negative straight leg raise, normal deep tendon reflex, no tremors in extremities, no varicosities, no clubbing, no cyanosis, normal motor strength bilaterally, 5/5 strength in upper and lower extremities, normal grip strength bilaterally, normal gait, and requires no assistive devices (id. at 300-01, 351, 396, 410, 420-21, 430-32, 460-65, 491, 499, 507-09, 512, 531, 552, 556, 597-98, 604, 613-28); "minimal" degenerative changes in her spine (id. at 346); and improvement and stabilization of symptoms with conservative treatment (i.e., medication). (Id. at 445, 461, 464, 485, 614-15). The ALJ also considered the evidence of Plaintiff's wide range of activities of daily living (i.e., living with and taking care of her disabled adult sister, cooking, cleaning, doing laundry, sweeping, vacuuming, making beds, going to church and the movies, shopping, and handling her own finances) (id. at 79-80, 250-54), all of which he found undermined her assertion that pain and swelling, particularly in her extremities, significantly limited her ability to work. Based on this evidence, the ALJ concluded that, despite Plaintiff's pain and swelling, she still was capable of performing the full range of light work. (Id. at 53).

While the ALJ could have made her findings clearer regarding

the effects, or lack thereof, of Plaintiff's nonexertional impairments on her ability to work, based on the record evidence detailed by the ALJ, the decision is not one which leaves with Court with insufficient information to evaluate the decision. See Dankert v. Commissioner of Soc. Sec., 2008 U.S. Dist. LEXIS 10646, *16, 2008 WL 423497, *6 (M.D. Fla. Feb. 13, 2008). Indeed, the Court is satisfied that the substantial evidence detailed above supports the finding that any alleged nonexertional limitations caused by Plaintiff's pain and swelling did not have a significant impact on her ability to perform light work and, thus, that the ALJ's use of the Grids to determine whether she was disabled was appropriate. Accordingly, Plaintiff's claim must fail.

> ### C. The ALJ did not err in the assessment of Plaintiff's credibility.

Last, Plaintiff argues that the ALJ erred in evaluating the credibility of her testimony related to her pain. (Doc. 16 at 17-18). Specifically, Plaintiff argues that the ALJ "failed to cite any specific examples in the record" to illustrate how her allegations of pain were inconsistent with the evidentiary record and, thus, that the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were inconsistent with the record evidence was merely conclusory. (Id. at 17). The Government counters that the ALJ carefully considered Plaintiff's testimony related to her symptoms (including pain) and evaluated her testimony in relation to her

treatment records and activities of daily living and, thus, performed a proper assessment that was fully supported by substantial evidence. (Doc. 17 at 7). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician or other persons, and evidence of how the subjective symptoms affect the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). In a case where a claimant attempts to establish disability through his or her own testimony concerning pain or other subjective symptoms, a three-part standard applies. That standard requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or other subjective symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other subjective symptoms]." Hubbard v. Commissioner of Soc. Sec., 348 Fed. Appx. 551, 554 (11th Cir. 2009) (unpublished) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). The Social Security regulations provide:

> [S]tatements about your pain or other symptoms
> will not alone establish that you are disabled;
> there must be medical signs and laboratory
> findings which show that you have a medical
> impairment(s) which could reasonably be
> expected to produce the pain or other symptoms

alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013). "A claimant's subjective testimony supported by medical evidence that satisfies the . . . standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).

Also, when evaluating a claim based on disabling subjective symptoms, the ALJ must consider all of the claimant's statements about his or her symptoms and must determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[11] See 20 C.F.R. § 404.1528. If an ALJ decides not to credit a claimant's testimony about his or her subjective symptoms, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding. Strickland v. Commissioner of Soc. Sec., 516 Fed. Appx. 829, 832 (11th Cir. 2013) (unpublished) (citing Foote, 67 F.3d at

---

[11] SSR 16-3p, which replaced SSR 96-7p, eliminates the use of the term "credibility" in the sub-regulatory policy and stresses that, when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." Hargress v. Commissioner of Soc. Sec., 883 F.3d 1302, 1308 (11th Cir. 2018)(citing SSR 16-3p, 2016 SSR LEXIS 42016, WL 1119029, *1).

1562).  Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true.  Holt, 921 F.2d at 1223.

The Eleventh Circuit has held that the determination of whether objective medical impairments could reasonably be expected to produce subjective symptoms is a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1985), *vacated on other grounds and reinstated sub nom.*, Hand v. Bowen, 793 F.2d 275 (11th Cir. 1986).  A reviewing court will not disturb a clearly articulated finding related to a claimant's claims of disabling subjective symptoms, with substantial supporting evidence in the record.  See Nye v. Commissioner of Social Sec., 524 Fed. Appx. 538, 543 (11th Cir. 2013) (unpublished).

In the instant case, the record shows that Plaintiff testified (and reported to the Agency) that she has diabetes, a pinched nerve, blurred vision, and vertigo; that she takes medication for these conditions; that her medications make her drowsy; that she has back pain every day; that she does not use a cane, brace, or a TENS unit; that her back pain prevents her from sleeping; that she can walk for about five minutes and stand for about twenty minutes; that her arms and feet swell; that she has burning and tingling in her feet

and numbness in her hands; that she gets dizzy and unbalanced; that she lives with her daughter, her two grandchildren, and her sister and takes care of her sister who has an intellectual disability; that she cooks, plays with her grandchildren, does laundry, sweeps, vacuums, and makes the bed; that she has no problems with personal care and does not need reminders to do things; that she occasionally has trouble straightening her hair; that she goes out daily alone and shops, goes to the movies and to church; and that she handles money and her own finances. (Doc. 15 at 49-50, 73-81, 217, 250-61).

Contrary to Plaintiff's claim that the ALJ failed to consider this evidence, the record shows that the ALJ discussed this very evidence and found her statements about the limitations caused by her pain and other symptoms to be inconsistent with the substantial medical evidence in the case. (Doc. 15 at 49-53). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record. . . ." (Id. at 50). The ALJ stated: "the objective medical record does not support the claimant's allegations of disability." (Id.).

Indeed, as the ALJ pointed out, and as has been detailed herein, the record reflects that Plaintiff's treating physicians

regularly recorded normal musculoskeletal examination findings, as did consultative examiner, Dr. Andrade, including full range of motion in all extremities, negative straight leg raise, normal sensation, normal muscle tone, normal reflexes, normal coordination, unimpaired gait, "minimal" degenerative changes in her back, normal EKGs, normal CT scan of her head, and improvement in swelling and pain with medication. (Id. at 79-80, 250-54, 300-01, 346, 351, 396, 410, 420-21, 430-32, 445, 460-65, 485, 491, 499, 507-09, 512, 531, 552, 556, 597-98, 604, 613-28).

Based on the foregoing substantial record evidence and a careful review of the ALJ's decision, the Court is satisfied that the ALJ offered adequate explanations for discounting Plaintiff's testimony related to her pain, specifically including the ALJ's discussion of the objective medical evidence that was inconsistent with Plaintiff's testimony regarding the severity of her alleged pain and other symptoms. Thus, the ALJ did not err in assessing Plaintiff's credibility or applying the pain standard, and Plaintiff's claim must fail.

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental

security income be **AFFIRMED.**

    **DONE** this **27th** day of **June, 2018.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
